IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NATIONAL INTERSTATE INSURANCE
CO.,
            Plaintiff,

        v.

CHAMPION TRUCK LINES, INC., et
al.

            Defendants.

Civil Action
No. 11-5097 (JBS-KMW)

**OPINION**

APPEARANCES:

Dennis M. Marconi, Esq.
Barnaba & Marconi, LLP
315 Lowell Ave.
Trenton, NJ 08619
    Attorney for Plaintiff and Counter Defendant National
    Interstate Insurance Company

Jon Michael Dumont, Esq.
Rawle & Henderson LLP
Ten Lake Center Executive Park
401 Route 73 North
Suite 200
Marlton, NJ 08053
    Attorney for Defendant and Third Party Plaintiff and Cross
    Claimant and Counter Claimant Carolina Casualty Co.

Julia Morrow, Esq.
Friedman Schuman PC
101 Greenwood Avenue
Fifth Floor
Jenkintown, PA 19046
    Attorney for Defendant John Davis

**SIMANDLE,** Chief Judge:

## I.   INTRODUCTION

    Plaintiff National Interstate Insurance Co. ("National

Interstate") seeks a declaratory judgment against Defendants

Carolina Casualty Insurance Company ("Carolina Casualty") and Champion Services, Inc. ("Champion") declaring that National Interstate is not primarily liable for the damages resulting from a truck accident that occurred on June 15, 2010, in which Defendant John Davis[1] was injured. Defendants Davis and Carolina Casualty filed motions for summary judgment [Docket Items 29 & 30, respectively], seeking to establish, inter alia, that National Interstate is the primary insurer because the truck that injured Davis was a "hired auto" pursuant to the terms of the National Interstate insurance contract. Both motions for summary judgment will be denied because Northstar did not "hire" the Champion tractor and, therefore, Northstar's policy is not primary.

## II.   FACTUAL BACKGROUND

The essential facts in this case are undisputed.[2] On June 15, 2010, Defendant John Davis was injured at Packer Marine Terminal in Philadelphia, PA. (Davis Mem. Law. Supp. Mot. Summ. J. ("Davis Mem.") at 1.) He was struck by a chassis attached to a tractor trailer being driven by Defendant Paul Dillard, a

---

[1] The pleadings refer to both John and Johnny Davis. His birth name is Johnny Davis. [Docket Item 29 at 4.]

[2] None of the parties submitted statements of undisputed material facts, as required by Local Civil Rule 56.1(a). The Court has referenced the factual background sections in the parties' briefing.

Champion employee. (Davis Mem. at 1-2.) Dillard was a long-standing Champion employee, working as a commercial driver. (Davis Mem. at 2.) Champion is an interstate motor carrier/trucker authorized by the United States Department of Transportation ("USDOT") to transport goods throughout 48 states. (Davis Mem. at 2.) At the time of the accident, Champion was insured by Defendant Carolina Casualty under a Commercial Transportation Policy bearing policy number CBP 354244 ("Carolina Casualty Policy"). (Davis Mem. at 2.)

Third Party Defendant Northstar Services, Ltd. ("Northstar") is also a USDOT-registered interstate trucking company. At the time of the accident, Northstar was insured by National Interstate under a Commercial Auto Liability Policy bearing policy number HAT 0010221 ("National Interstate Policy"). (Davis Mem. at 3.)

In early June of 2010, Northstar employee Anthony Cancelliere called Champion's owner, Ralph DiFabio, and asked Champion to haul containers from Dependable Distribution Services ("Dependable") in New Jersey to Northstar's terminal in New Jersey. (Davis Mem. at 2, 4.) Each of the containers at Dependable's terminal sat upon a chassis, which Northstar had previously borrowed from of pool of chassis at the Packer Terminal. (Davis Mem. at 4-5.) Cancelliere and DiFabio verbally agreed that each chassis would be returned to the Packer

3

terminal after each Dependable haul and that Northstar would pay
Champion $400 per haul. (Davis Mem. at 5.) DiFabio and
Concelliere did not explicitly discuss insurance coverage for
the Dependable haul. (DiFabio Dep. 38:23-39:2.)

On June 15, 2010, a Champion employee and driver, Richard
Kearns, operating a Champion tractor typically assigned to his
use, retrieved a container of cocoa beans from Dependable's
terminal in New Jersey. (Davis Mem. at 5.) Northstar was the
designated carrier on the bill of lading for the cocoa beans.
(Davis Mem. at 5.) Kearns delivered the container of cocoa beans
to Northstar's terminal in New Jersey and returned to Champion's
terminal in New Jersey with the empty chassis. (Davis Mem. at
6.) Defendant Dillard then hitched the chassis to his tractor
and drove it from the Champion terminal to the Packer Terminal
in Pennsylvania. (Davis Mem. at 6.) While driving through the
Packer Terminal lot, Dillard struck Davis with the tractor and
chassis.[3] (Davis Mem. at 6.) Davis finished returning the chassis
and received an equipment receipt reflecting that Northstar had
returned the chassis. (Davis Mem. at 6.)

In November of 2011, Davis filed a Pennsylvania state court
action seeking damages from, inter alia, Northstar and Champion
for the injuries he sustained in the accident. (Davis Mem. at

---

[3] The record is inconsistent as to whether the tractor, the
chassis, or both struck Davis. That fact is immaterial to the
Court's analysis.

6.) National Interstate then filed the present action to establish which whether Northstar's insurer, National Interstate, or Champion's insurer, Carolina Casualty, is the primary insurer. [Docket Item 1 (Compl.).]

Champion's Carolina Casualty insurance policy has a clause, which states:

> This Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collective insurance for any covered "auto" while hired or borrowed from you by another "trucker".

[Docket Item 29-4 at 85.] Under the terms of this clause, Champion's Carolina Casualty policy is excess for autos that are hired by another trucker. Northstar's National Interstate policy has an identical clause. [Docket Item 29-9 at 24.] Under this clause, Northstar's National Interstate policy is primary if Northstar has hired an auto to be used exclusively in its business as a trucker.


### III. ANALYSIS

#### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute is "genuine" if "the evidence is such that a

reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007).

A court should grant summary judgment "in a declaratory judgment action seeking a declaration of coverage, when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." Harco Nat. Ins. Co. v. Zurich Am. Ins. Co., 8:10-CV-27-T-17 (TGW), 2011 WL 4460261, *1 (M.D. Fla. Sept. 26, 2011) aff'd, 479 F. App'x 920 (11th Cir. 2012).

### B. Status of Plaintiff's "Cross-Motions for Summary Judgment"

The Court notes that Plaintiff's opposition briefs in both motions were entitled, "Memorandum of Points and Authorities in Opposition to Defendant John Davis' Motion [or Defendant Carolina Casualty Insurance Company's Motion] for Summary Judgment and in Support of Plaintiff National Interstate Insurance Company's Cross-Motion for Summary Judgment." [See

Docket Items 32 & 34.] Thus, one might receive the impression that National Interstate was cross-moving for summary judgment against the Defendants. National Interstate filed no such notice of cross-motions, nor did it propose an order for granting any cross-motions, nor did it set forth, or otherwise adopt, a statement of material facts not in dispute, all as required by L. Civ. R. 7.1(d),(e), & (h) (with respect to cross-motion procedure) and L. Civ. R. 56.1(a) (with respect to filing statement of material facts not in dispute). Nothing in Plaintiff's opposition brief otherwise advocates for granting of its own cross-motions. Most importantly, it appears that the Defendants, as the original movants, did not perceive in their Reply Briefs [Docket Items 33 & 36] that Plaintiff National Interstate had asserted cross-motions against them.

Accordingly, the Court does not perceive that the cross-motions have been adequately noticed or briefed. The Court notes, however, that the case was ripe for such cross-motions as they would be "related to the subject matter of the original motion" as required by L. Civ. R. 7.1(h). Such cross-motions are not decided at this time, but the Court will follow the procedure, outlined in Part III.D, below.

**C. "Hired" Auto Analysis**

"When there is a dispute between two carriers, . . . the insurance policies themselves are determinative." U.S. Fid. &

7

Guar. Co. v. Am. Auto. Ins. Co., A-0520-06T2, 2007 WL 2238532.
*4 (N.J. Super. Ct. App. Div. Aug. 6, 2007) (citing Carolina
Cas. Ins. Co. v. Ins. Co. of N. Am., 595 F.2d 128, 138 (3rd Cir.
1979)).[4] In interpreting insurance contracts, "the words of an
insurance policy should be given their ordinary meaning, and in
the absence of an ambiguity, a court should not engage in a
strained construction to support the imposition of liability."
Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537 (1990); see also
Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992)
("Generally, an insurance policy should be interpreted according
to its plain and ordinary meaning.").

The parties agree that the dispositive issue is whether
Northstar "hired" from Champion the tractor that injured Davis.
(See, e.g., Davis Mem. at 8, Carolina Casualty Br. Supp. Mot. at
2, Northstar Opp'n to Carolina Casualty Mot. at 4.) If Northstar
"hired" the Champion truck, then pursuant to both insurance

---

[4] Northstar and Champion are both New Jersey corporations.
(Compl. ¶ 16.) John Davis was injured in Pennsylvania and is a
Pennsylvania resident. (Compl. ¶ 4, 10.) The insurance policies
from which the instant coverage dispute arises were issued in
New Jersey. (Compl. ¶ 17.) None of the parties explicitly
discussed which law governs, and they cited both New Jersey and
Pennsylvania state court cases. The Court has not conducted a
choice of law analysis because the outcome of this lawsuit would
be same under both New Jersey and Pennsylvania law. See
Selective Way Ins. v. Travelers Prop. Cas. Co. of Am., 724 F.
Supp. 2d 520, 526 (E.D. Pa. 2010), discussed infra. Under New
Jersey law, when the same result is required under the laws of
all relevant jurisdictions, the court need not decide which law
would apply to the action. Port Auth. of New York & New Jersey
v. Arcadian Corp., 189 F.3d 305, 311 (3d Cir. 1999).

policies, the National Insurance Policy is primary. If Northstar did not "hire" the Champion truck, then the Carolina Casualty Policy is primary.[5]

Neither insurance contract defines the term "hire", but there are "hired auto" cases that examine the meaning of the term: "The key inquiry regarding whether an automobile will fall within the hired automobiles provision of the policy is whether the insured exercised dominion, control or the right to direct the use of the vehicle." Selective Way Ins. v. Travelers Prop. Cas. Co. of Am., 724 F. Supp. 2d 520, 526 (E.D. Pa. 2010) (citing Lee R. Russ & Thomas F. Segalla, COUCH ON INSURANCE § 118.46, at 118-74 (3d ed. 1997)). The Selective Way court found

---

[5] Davis also argues that the National Interstate Policy is primary because the Motor Carrier Act of 1980 requires that all commercial liability policies must contain an endorsement, the MCS-90 endorsement, to protect members of the public when there is no other insurance coverage available. The MCS-90 endorsement is not applicable here because "where the case is concerned with responsibility as between insurance carriers, and not with the federal policy of protecting the public, . . . a court should consider the express terms of the parties' contracts." Carolina Cas. Ins. Co. v. Ins. Co. of N. Am., 595 F.2d 128, 138 (3d Cir. 1979); see also Griffin v. Pub. Serv. Mut. Ins. Co., 327 N.J. Super. 501, 508 (N.J. App. Div. 2000) (federal regulations concerning protecting the public "do not control in situations where the dispute is solely between the insurance companies, including controversies between carriers as to which of them affords primary rather than excess coverage"). Defendant Carolina Casualty also acknowledged that the MCS-90 endorsement is not triggered because both "policies are valid and collectible" and the MCS-90 "is a guarantee forged of public policy considerations that the insurer shall pay any judgment in cases where the insurance is not applicable." (Carolina Casualty Mem. at 6.)

that "[t]he majority of courts that apply the plain meaning of 'hire' when interpreting policies like the one at issue have found the term to contain an element of control." <u>Selective Way</u>, 724 F. Supp. 2d at 526 (internal string cite omitted).

The <u>Selective Way</u> court noted several factors that courts consider when evaluating "hired auto" clauses in the hauling context, including, "the degree of control exerted over the vehicle, driver, and route . . . ." <u>Selective Way</u>, 724 F. Supp. 2d at 527.[6]

An examination of these factors clearly reveals that Northstar did not "hire" the tractor that Dillard was driving. The Champion operations manager decided which drivers and which trucks would perform the Dependable job. (DiFabio Dep. 35:1-9.)

---

[6] This analysis of control is similar to the analysis that New Jersey courts conduct to distinguish between an employee and an independent contractor: In determining whether a contractee maintains the right of control, several factors are to be considered . . . including: (a) the extent of control which, by the agreement, the master may exercise over the details of the work;(b) whether or not the one employed is engaged in a distinct occupation or business; (d) the skill required in the particular occupation; (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether or not the work is a part of the regular business of the employer; and (i) whether or not the parties believe they are creating the relation of master and servant." <u>Mavrikidis v. Petullo</u>, 153 N.J. 117, 132, 707 A.2d 977, 984 (1998) (citing Restatement (Second) of Agency § 220(2) (1958)).

Case 1:11-cv-05097-JBS-KMW   Document 37   Filed 03/21/13   Page 11 of 16 PageID: 1965

Northstar did not directly pay Dillard or Kearns; it paid
Champion who then paid Dillard and Kearns. (DiFabio Dep. 57:2-
9.) Champion's dispatcher directed Dillard to take the chassis
back to Packer Terminal. (DiFabio Dep. 136:21-23.) Dillard used
a Champion truck, obtained the chassis from the Champion yard,
and operated pursuant to Champion's dispatcher's instructions.
(Dillard Dep. 42:8-18.)

    Dillard worked for Champion for 12 years and drove a truck
specifically assigned to him by Champion. (Dillard Dep. 9:16-17,
11:1-3.) Champion serviced Dillard's truck with its own
mechanics. (Dillard Dep. 11:22-12:1.) Champion paid Dillard's
salary. (Dillard Dep. 12:9-13.) Dillard was never hired as an
employee by Northstar or paid by Northstar. (Dillard Dep. 13:19-
23.) The day of the accident, Dillard reported to Champion and
Champion's dispatcher gave him instructions regarding "what to
do, . . . where to go." (Dillard Dep. 13:24-14:17.)

    In addition, Dillard did not work exclusively for
Northstar; returning the chassis used in the Dependable haul was
the first job he performed on Northstar's behalf.[7] In addition,
there is no indication in the record that Northstar instructed

---

[7] One month prior to the Dependable job, Northstar's Cancelliere
and Champion's DiFabio agreed that Champion would haul goods to
Maryland for Northstar at a rate of $500-$525 per haul. (Davis
Mem. at 4.) Dillard was not one of the drivers who worked the
Maryland job. (DiFabio Dep. 35:19-36:1.)

Dillard as to the specific route he was supposed to take or how to operate his vehicle.

In sum, no reasonable jury could find that Northstar controlled Dillard and his tractor because Northstar did not provide or maintain his equipment, did not choose him to perform the job, did not pay him, and did not instruct him on the particulars of performing his job. Because a reasonable jury could not find that Northstar controlled Dillard and his tractor, Northstar did not hire Dillard. See Selective Way, 724 F. Supp. 2d at 528-529.[8]

Davis and Carolina Casualty argue that Northstar had hired Dillard and his tractor because Dillard's truck had a Northstar placard on the day of the accident. Defendants cite Cox v. Bond Transp., Inc., 53 N.J. 186 (1969), which holds that when a trucker engages an owner-operator of a tractor to transport goods in interstate commerce, and indicates that intention with the required identification and decals, Interstate Commerce

---

[8] The day after the accident, Champion instructed Dillard to fill out a Northstar driver application so that Northstar could have him in its files as an employee; he was instructed to backdate the application. (DiFabio Dep. 77:10-87-20.) After the accident, Dillard also signed an affidavit saying "I was not working for Champion at the time of the June 15 accident." (Dillard Dep. 44:13-16.) These actions do not change the degree of control that Northstar was exerting over Dillard and do not change the "hired auto" analysis.

12

Commision ("ICC") regulations must be deemed included in their contract. Id. at 201.

The Cox court explained that its rationale was to protect the public: "In our judgment the I.C.C. regulations designed to control the use of leased equipment must be construed most liberally in the interest of members of the public using the highways." Id. at 203. Federal regulations are intended "to protect the public from the tortious conduct of judgment-proof operators of interstate motor carrier vehicles," by requiring "a motor carrier to assume full direction and control of leased vehicles." Price v. Westmoreland, 727 F.2d 494, 496 (5th Cir. 1984). To accomplish this goal, the ICC[9] promulgated regulations requiring, inter alia, that leases be in writing and provide for exclusive possession, control, and use of the equipment and requiring lessors to provide lessees with a placard identifying the motor carrier for whom the equipment is being operated. Harco Nat. Ins. Co. v. Zurich Am. Ins. Co., 8:10-CV-27-T-17 (TGW), 2011 WL 4460261, *11 (M.D. Fla. Sept. 26, 2011), aff'd, 479 F. App'x 920 (11th Cir. 2012) (explaining history of ICC placard regulations).

---

[9] In 1995, Congress abolished the Interstate Commerce Commission and transferred most of its responsibilities to the Secretary of Transportation. Dep't of Transp. v. Pub. Citizen, 541 U.S. 752, 759 n.1 (2004).

But ICC regulations have been amended since the Cox case
was published: "In 1986, however, the ICC amended the leasing
regulations to clarify that it never intended 'to assign
liability based on the existence of placards or to interfere
with otherwise applicable State law.'" Id. at *11 (citing Lease
& Interchange of Vehicles (Identification Devices), 3 I.C.C.2d
92, 9394 (1986)). The ICC specifically noted that it expected
courts to decide insurance disputes based on principles of state
law:

> certain courts have relied on Commission regulations
> in holding carriers liable for the acts of equipment
> owners who continue to display the carrier's
> identification on equipment after termination of the
> lease contract. We prefer that courts decide suits of
> this nature by applying the ordinary principles of
> State tort, contract, and agency law.

Lease & Interchange of Vehicles (Identification Devices) (49
C.F.R. Part 1057), 3 I.C.C.2d 92, 93 (Oct. 10, 1986). The
presence of Northstar's placard on Dillard's truck is not
dispositive in this action. The issue here is not protecting the
public from under- or un-insured truckers; the issue is which
insurance policy is primary when both are valid and
collectible.[10]

---

[10] Defendants also note that Northstar is not authorized to
operate as a freight broker. (Carolina Casualty Reply ¶ 1.) Even
assuming, arguendo, that Northstar was improperly operating
without authorization as a broker, Defendants do not cite case
law or clauses in the insurance contracts establishing that the

### D. Notice of Contemplation of Summary Judgment Against the Moving De fendants

It appears beyond dispute, upon the facts submitted in the record of these summary judgment motions, that, as a matter of law, Plaintiff National Interstate may be entitled to judgment in its favor declaring that its policy is not primary and Carolina Casualty's policy is primary. This prospect is probably what Plaintiff sought to achieve in its Opposition/cross-motion briefing titles previously mentioned, see Part III.B, supra. Because such cross-motions were not actually perfected or responded to, fairness requires that Defendants be given the opportunity to address the specific issue.

Thus, Rule 56(f) provides: "After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for the nonmovant . . . ."

The Court will therefore give notice to Defendants Carolina Casualty Co. and Johnny Davis that it is contemplating entering summary judgment in favor of the nonmovant National Interstate Insurance Co. declaring that Policy No. CBP 354244 issued by Carolina Casualty Insurance Co. to Champion Services, Inc., is the primary policy available to Northstar Services, Inc., Champion Services, Inc., and Paul Dillard with regard to the underlying personal injury claim of Johnny Davis, and that

absence of freight broker authorization establishes that the National Interstate Policy is primary.

15

Carolina Casualty Insurance, Co. has the duty to defend Northstar Services, Ltd., Champion Services, Inc., and Paul Dillard in such underlying lawsuit by Johnny Davis. The Defendants will have fourteen (14) days hereof to file any opposition, and Plaintiffs will have seven (7) days thereafter to reply. (Reasonable extensions will be granted by consent or if good cause is shown.)


   **IV.   CONCLUSION**

   The motions of Defendants John Davis and Carolina Casualty will be denied. Northstar did not "hire" the Champion tractor and, therefore, Northstar's policy is not primary. The movants will have fourteen (14) days to show cause why judgment should not be entered in favor of nonmovant, National Interstate Insurance Co., pursuant to Fed. R. Civ. P. 56(f)(1), as provided in part III.D, above.

   The accompanying order is entered.


   **March 21, 2013**                    **s/ Jerome B. Simandle**
   Date                                 JEROME B. SIMANDLE
                                        Chief U.S. District Judge